# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HOME DESIGN SERVICES, INC.,**
                **Plaintiff,**

**-vs-**                                        **Case No.  6:03-cv-596-Orl-28DAB**

**SCHWAB DEVELOPMENT CORPORATION,**
**d/b/a Schwab Custom Homes,**
**WILLIAM D. KLEIN,**
**MICHAEL P. SCHWAB,**
                **Defendants.**
_____

# ORDER

Relying on 28 U.S.C. §§ 144 and 455, Plaintiff, Home Design Services, Inc., ("HDS")

has moved to disqualify this Court from participation in this case and any other "proceeding

involving Home Design and/or its counsel of record."[1]  Relying on allegations contained in

the affidavit of a non-party, the motion asserts that a reasonable person could conclude that

the Court has a personal bias against HDS and its attorneys such that the Court's impartiality

might be reasonably questioned.  The motion is untimely and is therefore denied.  Moreover,

even if the motion had been timely filed, its allegations are without merit.

*Background*

HDS is in the business of designing and publishing house plans.  Over the past

several years HDS has filed thirty-nine lawsuits in the Middle District of Florida alleging that

various homebuilders infringed its copyrighted plans.  Of those cases, eleven have been

_____

[1]HDS has filed a disqualification motion in both this case (Doc. 195) and HDS v. Park
Square Enterprises, Inc., 6:02-cv-637-Orl-28JGG (Doc. 299).

assigned to this Court for disposition, including this case ("Schwab") and HDS v. Park Square Enterprises, Inc., 6:02-cv-637-Orl-28JGG ("Park Square"). Schwab and Park Square were initially scheduled for trial in May and June of 2005.

The trial in Park Square never began; it was delayed because James Zirkel ("Mr. Zirkel"), the majority owner, president, and corporate representative of HDS, had incorrectly represented throughout the litigation that one of the copyrighted plans was his original creation. HDS's counsel agreed that the trial could not go forward and that Defendant Park Square should be given an opportunity to bring a motion for summary judgment.

Despite delays, trial began in this case on May 23, 2005. On the first day of trial, HDS's counsel made an opening statement and finished his direct examination of Mr. Zirkel; cross-examination of Mr. Zirkel was scheduled to begin the next morning. As defense counsel was about to begin his cross-examination of Mr. Zirkel, HDS's counsel raised several objections to proceeding, the last of which was that Mr. Zirkel was too ill to proceed. HDS's counsel moved for a mistrial or, in the alternative, a lengthy continuance. The Court continued the trial for two weeks.

The Court later received an ex parte letter from a physician stating that Mr. Zirkel would not be able to participate in a trial for at least six months. Based on the doctor's report, HDS renewed its motion for mistrial. The Court provided defense counsel with a copy of the doctor's letter, after which the Schwab Defendants moved for dismissal. Before the Court ruled on the pending motions, HDS's counsel provided the Court a second letter from Mr. Zirkel's doctor and again moved to continue the case indefinitely. Defense counsel again moved for a dismissal. (Schwab Doc. 162).

-2-

The Court did not rule on pending motions but returned the jury in an effort to conclude the trial.  HDS's counsel announced the presence of an HDS employee who would serve as a substitute corporate representative.  The Court's attempt to continue the trial proved futile and both sides agreed that the trial could not go forward.  The Court then set an evidentiary hearing on the pending motions, including Schwab's Motion to Dismiss.  At the conclusion of the evidentiary hearing, after considering the testimony of the witnesses and arguments of counsel, the Court granted Schwab's Motion to Dismiss.  The Court's reasoning for the dismissal is set forth in its Order.  (Schwab Doc. 189).

After the Order of dismissal was entered in this case, HDS moved to disqualify the Court.  The facts asserted in support of the motion to disqualify consist totally of statements made by the Court in discussing or disposing of issues pending before it.  Some of these statements were made during pretrial hearings, but most were made in conjunction with the Court's consideration of issues raised in the motions for continuance, mistrial, and dismissal. Two of the statements upon which the motion relies were contained in the Court's Order on the motion for dismissal.

*The Statutes*

Questions of judicial disqualification are most frequently decided under 28 U.S.C. § 455.  The current version of this statute parallels Canon 3C of the Code of Conduct for United States Judges,[2] providing an objective standard for deciding the question of

---

[2]C. Disqualification.
(1)  A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:
(continued...)

disqualification and requiring that a judge "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  It is this language contained in section 455(a) upon which HDS relies.

HDS's motion to disqualify is also brought pursuant to 28 U.S.C. § 144.  This less frequently used statute provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit[3] that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one

---

[2](...continued)
(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

[3]In this instance, the person signing the affidavit, Janice Zirkel, is not a party to the lawsuit.  Although a minority shareholder, Ms. Zirkel is not the president of Home Design Services, Inc., nor is she its corporate representative.  While it seems altogether reasonable to relax the strict requirements of section 144 when a party is incapacitated there should be a showing of personal knowledge of the facts asserted in the affidavit accompanying the motion to disqualify.  Although Defendants have not questioned Ms. Zirkel's knowledge of the facts, deposition testimony that Ms. Zirkel provided subsequent to the dismissal of this case casts doubt on whether her affidavit is based on personal knowledge.  Park Square, Ex. 2 to Doc. 312.  In her sworn testimony Ms. Zirkel stated that she had not been present for other hearings in this case or Park Square other than the evidentiary hearing regarding her husband's health.  In that hearing she was a witness and subject to the rule of sequestration.  She explained that she reads transcripts of her own testimony but does not regularly read the testimony of others.  Ms. Zirkel specifically testified that she was not present for the hearing in another of HDS's cases, HDS v. Bracci, and had not read the transcript of that proceeding, leaving open the question as to how she learned of the facts contained in her affidavit in support of the motion to disqualify about which she testified in detail.

such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Section 144 requires a showing of actual bias as opposed to an appearance of bias as required in section 455.  Also, unlike section 455, section 144 contains a specific requirement as to the time in which a motion must be filed.

*Timeliness of the Motion to Disqualify.*

The first task for this Court is to determine whether HDS's motion and supporting affidavit were timely filed.  Because of the possibility of substantial abuse, courts demand "strict compliance" with the procedural requirements of section 144, including the requirement that a motion to disqualify be timely.  *In re* Martinez-Catala, 129 F.3d 213, 218 (1st Cir. 1997).  Of course, the requirement of section 144 that a motion and affidavit "be filed not less than ten days before the beginning of the term at which the proceeding is to be heard" is no longer applicable due to the abolition of set terms of court. However, the provision has been interpreted to mean that disqualification must be sought promptly upon first learning of the alleged facts giving rise to the claim of judicial bias.  See Green v. Dorrell, 969 F.2d 915, 919 (10th Cir. 1992).  The policy behind this strict requirement of timeliness is obviously to "conserve judicial resources and prevent . . . litigant[s] from waiting until an adverse decision has been handed down before moving to disqualify the judge."  Summers v. Singletary, 119 F.3d 917, 921 (11th Cir. 1997).

The same policy considerations have led courts to require that motions brought under section 455 also be filed in a timely manner, notwithstanding the lack of a specific statutory provision.  "All the circuits that have considered the question . . . agree that a party may not

hold back 'a recusal application as a fall-back position in the event of adverse rulings on pending matters.'" Recusal, Analysis of Case Law Under 28 U.S.C. §§ 455 & 144, Federal Judicial Center (2002) (quoting In re IBM Corp., 45 F.3d 641, 643 (2d Cir. 1995)) (other citations omitted). As with motions brought under section 144, motions to disqualify pursuant to section 455 must be brought "at the earliest moment after obtaining knowledge of facts demonstrating the basis for such a claim." Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1410 (5th Cir. 1994); see also U.S. v. Slay, 714 F.2d 1093, 1094 (11th Cir. 1983).

HDS's motion to disqualify is untimely. The conduct that HDS asserts is evidence of bias or prejudice consists of comments and questions by the Court. Most of these comments were oral and were made during hearings which took place in the course of protracted litigation. The last of these oral utterances was made during an evidentiary hearing on June 17, 2005, more than six months before the motion to disqualify was filed. The only other comments HDS refers to are contained in the written Order of dismissal in this case. In other words, HDS waited to see what the outcome of the motion to dismiss would be; only after the adverse ruling was issued did HDS move to disqualify this Court.

Although the statements included in the written Order are discussed below, one of them must be briefly mentioned here. The propriety of the opening statement of HDS's attorney was relevant to the issue of whether this case should be dismissed and therefore was discussed in the Order of dismissal. In its Order the Court referred to the opening statement, which it deemed to be improper and unprofessional, as "bumbling." The Court's concern with the opening statement was not registered for the first time in the Order of dismissal. Indeed, as reflected in HDS's motion the Court indicated that the opening

remarks were improper at the time they were made.  The use of an unflattering adjective in the dispositive order does not start the clock for a timely motion running anew.

Based on the foregoing analysis, the Court determines that HDS's motion to disqualify is untimely and must be denied on that basis.

*Sufficiency of Factual Basis*

Even if the motion and affidavit had been timely, they would fail because they do not set forth a sufficient factual basis to justify disqualification.  Generally speaking, a court's rulings[4] as well as its expressions and opinions reached during proceedings will not constitute sufficient basis for disqualification.  The Supreme Court reaffirmed this "extrajudicial source" doctrine in <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994):

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion.

This rule applies to section 144 as well as section 455.  In this instance, all of the Court's

---

[4]In the Order of dismissal, the Court assessed the merits of Defendants' motion to dismiss and quoted defense counsel, who had stated, "It seems as though Mr. Zirkel is as fine as long as money's coming in.  He can sell his business, he can settle cases, he can take money in; but when he has to prove up his case, he has cognitive disabilities . . . ." <u>Schwab</u> Doc. 189 at 19.  In deciding whether to grant the motion to dismiss the Court assessed the inconsistencies between Mr. Zirkel's conduct and the argument of counsel that Mr. Zirkel's medical condition required termination of the trial.  This statement was made in disposing of that issue and cannot be the basis for disqualification.  If the rule were otherwise, every time a court made an adverse decision regarding the credibility of a party, the court would be subject to disqualification.

statements upon which HDS relies were made in the context of questioning counsel regarding issues, commenting on issues, or in announcing its rulings.

Furthermore, none of the comments made by the Court in its work on HDS's cases meets the objective standard required for disqualification.  While the facts alleged in a motion to disqualify must be taken as true, Phillips v. Joint Legislative Committee on Performance & Expenditure Review of Mississippi, 637 F.2d 1014, 1019 (5th Cir. 1981),[5] they must also be considered in context.  The disqualification standard requires the reviewing court to determine "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988)).  This requirement can only be satisfied if the facts alleged in a motion to disqualify are considered in context.[6]  In this instance, HDS refers to a number of statements that the Court made during the course of this case and the Park Square litigation.  In order for a hypothetical objective observer to fully understand whether these statements evince a bias on the part

---

[5]Cases decided by the Fifth Circuit prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

[6]Litigation in cases filed by HDS has been protracted and contentious.  There have been a total 260 motions filed in the copyright cases assigned to this judge; 108 of those motions have been resolved by this judge and the remainder have been disposed of by magistrate judges.  There have been 27 hearings on those motions.  Of the 12 hearings conducted by magistrate judges, 7 dealt with discovery issues.  The remaining 15 hearings were conducted by this Court, including one on HDS's last-minute amendment to add a claim and another to engage in discovery only three work days before trial.  It appears that HDS has prevailed in a significant percentage of the decisions on the motions filed.

of the Court, they obviously must be considered in conjunction with other statements and in light of surrounding circumstances.

HDS's counsel has represented HDS in all of its cases before this Court, and defense counsel has represented some of the other defendants.  Although there have been manifold surprises in the litigation, the one constant feature in these proceedings is the animosity counsel have for one another.  Their inability to work well together has required more court involvement than should have been necessary.  It is with this backdrop that HDS's remaining assertions of bias should be considered.

The statements and questions HDS refers to in the motion for disqualification and the attached affidavit, when considered in context, fail – individually and collectively – to establish a factual basis sufficient to require disqualification.  They are discussed below.

1. *Ruling enforcing the rule of sequestration.*

As a basis for its conclusion that the Court has an impermissible bias, HDS refers to an exchange that took place between the Court and HDS's counsel with regard to counsel's request for permission to call a rebuttal witness during the evidentiary hearing on the Defendants' motion to dismiss in this case.  Before testimony was presented, the witnesses were sequestered pursuant to Rule 615 of the Federal Rules of Evidence, which provides: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses . . . ."

As described in HDS's motion and affidavit, at the evidentiary hearing on Defendants' motion to dismiss HDS called a witness who was examined and cross-examined prior to the lunch break.  Later in the day, HDS's counsel requested permission to recall the witness in

rebuttal, whereupon the Court asked counsel whether he had spoken with the witness after her earlier testimony.  Counsel gave an affirmative response, and the Court made inquiry as to whether recalling the witness was proper.[7]  The following exchange then took place:

> HDS'S COUNSEL:  My understanding of the rule, Your Honor, is when they were still on the stand, direct or cross examination had not been completed, that you can't do that.
>
> THE COURT:  Well, so what you do to get around that is you let them go, then talk to them and recall them?  Is that how you get around that?

<u>Schwab</u> Doc. 182 157:22-158:2.  The Court's concern was that allowing the rebuttal testimony would defeat the purpose of the earlier invocation of Rule 615.  In the end, the Court determined that the proffered testimony was not rebuttal testimony and denied HDS's counsel's request to recall the witness.  HDS expresses the view that there is no legal support for the ruling and that the Court's question of counsel was unduly harsh and implied impropriety.

The Court disagrees.  "A trial judge has broad supervisory power over his courtroom and may within that discretion insist that a trial be presented in accordance with the ethical, professional, and prudential rules of trial conduct."  <u>United States v. Singleton</u>, 107 F.3d 1091, 1103 (4th Cir. 1997).  Enforcement of Rule 615 in response to a request to call a rebuttal witness is well within the ambit of the Court's legitimate concern for the integrity of

---

[7]HDS's counsel states that the manner in which the Court asked defense counsel to respond to the request to recall the witness is also evidence of bias.  After HDS made the request, the Court asked Defense counsel, "What do you say, Mr. Gilchrist: Is that okay?"  <u>Schwab</u> Doc. 182 at 159 ll. 23-24.  What is omitted from the account provided by HDS's counsel is that just a few minutes earlier, with regard to the same issue, the Court asked HDS's counsel, "Do you see any problem with that?"  <u>Id.</u> at 157 l. 11.

proceedings.  After all, "[t]he purpose of the rule is to prevent witnesses from 'tailoring 'their testimony to that of earlier witnesses and to aid in detecting testimony that is less than candid." United States v. Ell, 718 F.2d 291, 293 (9th Cir. 1983) (quoting Geders v. United States, 425 U.S. 80, 87 (1976)).

Although HDS's counsel concedes that it would not be proper to speak with a witness while testifying on direct or cross-examination, he states that he is "unaware of a single rule that would prohibit an attorney from speaking to a witness before placing that witness on the stand for rebuttal purposes." Park Square Doc. 299.  However, there is authority supporting this Court's interpretation of the rule.  The Ninth Circuit recognizes that the concerns giving rise to Rule 615 "are just as valid for a rebuttal witness who has already testified in the case-in-chief as they are for a primary witness." Ell, 718 F.2d at 293.  The Fifth Circuit has implied as much by holding that the trial court has discretion to allow testimony of a rebuttal witness who has violated the rule of sequestration.  United States v. Ortega-Chavez, 682 F.2d 1086, 1089-90 (5th Cir. 1982). Ordinarily, a witness continues to remain subject to the rule of sequestration for the very reason that the witness may be recalled on rebuttal.  See 6 J. Wigmore, Evidence § 1840 (Chadborn rev. 1976).

But, even apart from the dictates of Rule 615, a trial court "may make whatever provisions it deems necessary to manage trials in the interest of justice." United States v. Sepulveda, 15 F.3d 1161, 1176 (1st Cir. 1993).  This would at least include the continued enforcement of the rule of sequestration as it applies to non-party witnesses until the end of the proceeding or until the court specifically releases the witness from the requirements of the rule.  Questioning counsel as to whether the rule should be relaxed or how he intended

to avoid its application is a legitimate function of a trial judge and does not create a basis for disqualification.

2.   *Rulings regarding opening statement.*

As noted above, HDS's counsel has objected to the Court's description of his opening statement during the trial in this case as "bumbling."  This term was used in the Order of dismissal to describe how the opening statement improperly called matters to the jury's attention.  The Court viewed the opening statement as improper and unprofessional.  On two occasions, the Court inquired of counsel whether he would be able to prove matters asserted.[8]  Counsel answered affirmatively and continued on.

The most offensive part of the opening statement was counsel's announcement of a list of celebrities for whom HDS had allegedly done work.  Counsel told the jury:

> Home Design Services has built houses for people you've heard about.  Tim Raines of the White Sox, Frank Viola of the Minnesota Twins, Chet Lemon of the Detroit Tigers.  On the Orlando Magic, Reggie Theus, Dennis Scott, Greg Kite, Otis Smith, Ron Coppenberger of the Falcons.  The gold medal Olympic gymnast, Brandy Johnson.  The actor Robert Vaughn.  Princess Mahi and Prince Naif of Saudi Arabia.  Locally some of you may have heard of Mr. Real Estate, Edward Huskey, we designed his house, Home Design did.  Robert Vincent Sims, the garden rebel, we did his house.  We've actually done houses for the judiciary here, Judge Conway, Judge Presnell, both federal judges,[9] we did their houses.

---

[8]At one point, HDS's counsel began discussion of building techniques and costs. Schwab Doc. 156 at 87 ll. 10-18.  At another point he referred to the history of architecture by mentioning the ancient Greeks.  Id. at 90 ll. 7-18.

[9]All four federal judges working in Orlando maintain their offices and courtrooms on the same floor of the courthouse.  They also share the same foyer and waiting area outside the courtrooms.  The judges' names appear on signs in this common area, which was accessed by jurors as they were escorted to and from the jury room.

Schwab Doc. 156 82:22-83:10.  Neither the celebrities' nor the judges' names were on the witness list and there had been no prior mention of them during lengthy pre-trial proceedings.[10]

After the close of HDS's opening statement, the Court made inquiry of HDS's counsel out of the hearing of the jury.  The Court asked whether HDS's counsel planned to call the judges as witnesses and how work HDS had done for the judges might be relevant.  Schwab Doc. 156 98:6-100:13.  Counsel failed to advise the Court how mention of the federal judges related to any issue to be presented to the jury.  Ultimately, HDS's counsel admitted that the statement he made regarding work for one of the judges was false.  Id. 98:16-99:18.  Before the jury was returned, defense counsel moved for a curative instruction.  The Court granted the motion and instructed the jury to disregard the statement of HDS's counsel that his client had done work for federal judges.  Id. at 103.

Counsel's comments were improper.  "For counsel, in opening statement, to make statements which will not or cannot be supported by proof is, if it relates to significant elements in the case, professional misconduct; moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict."  Arizona v. Washington, 434 U.S. 497, 513 (1978) (quoting U.S. v. Dinitz, 424 U.S. 600, 612 (1976)) (Burger, J., concurring).  The comments of counsel did not go directly to an element of the case, but they were made with the purpose

_____

[10]There had been no prior mention of HDS building – as opposed to designing – houses.

of enhancing the prestige of HDS and Mr. Zirkel, its alter ego.[11]  The remarks were intended to influence the jury, but they had nothing to do with the issues in the case.  The Court deemed the conduct to be improper and took the action it deemed appropriate.

HDS takes the view that a judge should not correct conduct the court believes to be unethical or unprofessional absent an objection by opposing counsel, but this restrictive interpretation of the judge's role is incorrect.  A "trial judge has a duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop professional misconduct." Id.[12]  The Court's responsibility to protect the integrity of the trial extends to opening statements.  The Court should not permit counsel to make assertions to the jury that cannot be proved and are irrelevant to issues in the case.  That is why prior to the commencement of the opening statements this Court advised the jury – as it does in all trials – that the opening statements are given to allow the attorneys to "explain the issues in the case and summarize the facts that they expect the evidence will show." Schwab Doc. 156 at 69 ll.10-16.  This instruction is consistent with this Court's view that the purpose of opening statements is "to state what evidence will presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument." Arizona, 434 U.S. at 513.  It is the opinion of this Court

_____

[11]When the Court asked the purpose of the statements, HDS's counsel responded, "It's just people that are prominent to show that we are not a hack designer, that we do things for important people, that we are, have been around for a long time and have a tradition.  I considered it background." Schwab Doc. 156 at 100 ll. 9-13.

[12]Canon 3B(3) of the Code of Conduct for United States Judges provides:  "A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer."

that HDS's opening statement is contrary to the instruction the Court gave the jury and the Supreme Court's interpretation of the purpose of opening statements.  The Court had a duty to take reasonable action.

The hands-off position favored by HDS was asserted by a litigant in Florida state court, prompting the following response from the state appellate court:

> In our view, it is no longer – if it ever was – acceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which the parties may fight it out on unseemly terms of their own choosing, and then, on the ground that the loser has asked for what he received, obediently raise the hand of the one who emerges victorious.

Borden v. Young, 479 So. 2d 850, 851 (Fla. 3d DCA 1985).  Certainly "'a trial is a quest for truth, and a federal judge is more than a neutral arbiter,'" United States v. Bertram, 805 F.2d 1524, 1529  (11th Cir. 1986) (quoting United States v. Hickman, 592 F.2d 931, 934 (6th Cir. 1979)), and a judge should take appropriate action when required to protect the integrity of proceedings conducted in furtherance of that quest.  A judge's insistence that counsel comply with standards of ethics and professionalism does not establish a prima facie case of bias or prejudice requiring disqualification under either section 144 or section 455.

3. *Direct examination of James Zirkel.*

The direct examination of Mr. Zirkel during the trial in this case was equally troubling. Mr. Zirkel was HDS's primary and perhaps only substantive witness at trial.  On direct examination, HDS's counsel repeatedly and improperly placed Mr. Zirkel's character before the jury, creating a possible distraction from the copyright issues to be tried.  Examples of this conduct include counsel's question, "What about socially, are you involved in church at all?"  Schwab Doc. 156 at 119 ll. 14-15.  The question prompted this self-serving narrative

-15-

response from Mr. Zirkel:

> Very involved in our local church, Christian Missionary Alliance Church. Sunday school teacher, my wife and I teach a three and four year old class. Been a deacon and an elder and also church board member. Several years ago I was involved with International Cooperating Ministries where we toured Cuba and seed churches in Cuba, and my wife and I, and through that ministry, financed and built a church in India through International Cooperating Ministries.

Id. at 119 ll. 16-24. This answer was followed up by questions about Mr. Zirkel's work in financing the construction of a church, his role as the leader of a Bible study group, and his work with Habitat for Humanity. Id. at 120-26. Finally, when HDS's counsel again mentioned Mr. Zirkel's work for celebrity athletes, the Court interrupted the examination and out of the presence of the jury urged counsel to move on to relevant questions.[13] The Court considered the direct examination of Mr. Zirkel, like the name-dropping of celebrity clients, to be an affront to the integrity of the proceedings.

HDS's counsel concluded his direct examination of Mr. Zirkel at the end of the day. Before court was recessed, defense counsel made the following comment in response to Mr. Zirkel's testimony regarding the costs he incurred in bringing the suit: "Having opened the door I'd like to inquire as to Mr. Zirkel on cross examination about those costs and expenses because it's a contingency fee arrangement." Schwab Doc. 156 at 228 ll. 13-16. HDS's counsel agreed that the door had been opened. Referring to the character evidence presented by HDS the Court then stated that "there were a lot of doors opened, but I don't

---

[13]The Court said: "Okay. We've heard about church, we've heard about, now we're hearing about Habitat for Humanity. We've heard about organizations. We've heard about working in Ohio at 12 years old and it is now 1:30 and you've told me you're going to finish this case in two days, right?" Schwab Doc. 156 at 126 ll. 20-25.

know whether anybody's going to walk through them or not." Schwab Doc. 156 at 228:35-229:3.  The Court finds that an objective observer would not view these statements as evincing any bias against HDS.

*4. Allegations that the Court conducted its own investigation.*

Another of HDS's grievances is that the Court conducted its own investigation regarding issues in this case.  Obviously, an extrajudicial investigation by a judge into the facts of a case would likely create due process implications as well as call into question the judge's impartiality.  However, a court is not required to turn a blind eye to events occurring in cases assigned to and pending before it.  What HDS refers to as investigations during the trial in this case involves just that – the Court's awareness of judicial proceedings.

For instance, HDS's counsel complains that the Court conducted a telephone conference inquiring into the settlement of another of HDS's cases while the motion to dismiss in this case was pending.  Prior to the Court's dismissal of this case, HDS sent the Court notice that another case assigned to this judge, HDS v. Bracci, 6:03-cv-426-Orl-28KRS, had been settled.  Bracci Doc. 93.  Because HDS's counsel had advanced Mr. Zirkel's inability to exercise good judgment as a ground for mistrial and Mr. Zirkel's physician had stated that Mr. Zirkel was not responsible for what he said or did and that this condition would continue for the remainder of the year, the Court was concerned about the propriety of the settlement.  It appeared to the Court that either Mr. Zirkel, who had been the corporate representative throughout, had recovered and trial in this case could proceed, or he had not recovered and was not fit to settle the Bracci case.

HDS also argues that the Court's reference in the Order of dismissal to thirty-nine

-17-

cases filed by HDS in the Middle District constitutes evidence of an improper investigation and judicial bias.  Again, for the sake of context, it is noted that the Court was not the first to refer to the number of cases filed by HDS.  The issue was first raised when Mr. Zirkel testified at the Final Pretrial Conference in <u>Park Square</u> that he had filed in excess of sixty cases in the  Middle District.  <u>Park Square</u> Doc. 212 at 12:23-13:5.  HDS's counsel raised the issue again in support of a motion in limine in this case, arguing "[Defendant is] going to say you filed 60 lawsuits, all you're trying to do is get rich off of filing frivolous lawsuits." <u>Schwab</u> Doc. 154 at 21 ll. 8-10, 24 ll. 7-11.

Moreover, a judge is constantly reminded of the cases pending by the many reports generated incident to case management; reports referring to pending cases include pending motions reports, Civil Justice Reform Act ("CJRA") reports, and trial dockets.  Not only is a judge charged with knowing the cases assigned to him, but each time a case is filed before another judge, counsel is required to advise the Court of other related cases.  The Court generates a "Related Case Order and Track Notice" requiring each party to file the form "Notice of Pendency of Other Actions."  These related case notices are reviewed by the judges on a daily basis.  In short, having information regarding the number of pending cases a party has within a district is not evidence of bias.[14]

5. *Work attributed to Mr. Zirkel's misstatements.*

_____

[14]In a related grievance, HDS states that the Court's questions regarding the settlement of other cases leading up to Mr. Zirkel's claim of incapacity reflect bias.  This discussion occurred as the Court considered possible options after Mr. Zirkel claimed that he could not go forward with the trial.  Mr. Zirkel's recent settlement of other lawsuits was relevant to his sudden claim of illness and request for mistrial.

Referring to Park Square, HDS alleges "the court's disdain was also displayed towards HDS" because the Court said "[HDS] is responsible for '80 percent or more' of 'all of the work you all have given me." Schwab Doc. 299.   Although at first glance this statement, standing alone, might seem to suggest that the Court was commenting in an unflattering way on the number of cases filed by HDS, the comment would not likely put a disinterested person on notice that the judge was biased.  This is particularly so when the statement is considered in context.

The comment made by the Court was at the conclusion of an evidentiary hearing in Park Square necessitated by the discovery that one of the two plans mentioned in the Complaint was not an original as Mr. Zirkel had sworn.  This discovery was made after the case had been pending for two years and trial was approximately two months away.  During the hearing Mr. Zirkel admitted that his earlier testimony that the plan was an original was incorrect.  Park Square Doc. 212 at 21 ll. 11-13.  At the conclusion of the hearing, defense counsel requested the Court to strike HDS's pleadings.

HDS suggested that the case go forward on claims of infringement of three plans (two originals and a derivative) instead of two as originally pled.  HDS's counsel acknowledged that Mr. Zirkel's misstatements necessitated a continuance of the trial and an opportunity for Defendants to pursue another summary judgment motion.  Park Square Doc. 212 at 90 ll. 11-24.  The following excerpt referring to the three plans puts the Court's comment in context:

HDS'S COUNSEL: I understand scheduling, docketing and everything else. This was a mistake.  It is a rather broad mistake, but it's a mistake.  It is with respect to one-third of this action also and the case law that you have.

> THE COURT: One-third of the action if you count the number of plans, but if you count the amount of work that you all have given me, it seems to me that it's about 80 percent or more.

Park Square Doc. 212 at 91 ll. 4-12.  A reasonable person would conclude that the Court's reference was not to the number of cases filed by HDS but to additional work created in the case due to Mr. Zirkel's misrepresentation of the plan.  The Court's point was that counsel's assertion that adding a plan to this litigation would result in a proportionate one-third increase in the work understated the severity of the problem Mr. Zirkel had created.  In the end, the Court continued the trial with HDS's pleadings intact.

    *6. Comments made in an attempt to control proceedings.*

    Two of the comments referred to in HDS's motion to disqualify were made in an effort to control the proceedings.  During the Final Pretrial Conference in this case, the Court responded to a statement made by HDS's counsel that the Court was incorrect in its analysis of a legal issue.  The Court noted to counsel that counsel had also been critical of the Court in his written material.  Schwab Doc. 155 at 41-42.

    During the same Final Pretrial Conference, counsel for HDS complained that counsel for the Defendants was attempting to mislead the Court regarding the form of an exhibit.  The Court responded asking HDS's counsel:   "Do you think he [defense counsel] would try to mislead me knowing he appears before this court regularly?"  Schwab Doc. 155 at 26 ll. 21-23.  Counsel for HDS complained this question showed bias by the Court.  Given the context, including disharmony between counsel, a reasonable objective observer could have viewed the Court as encouraging counsel to focus on the issues rather than engaging in unhelpful personal accusations.

*7.  Alleged prompting of defense counsel.*

On June 13, the day before the trial in this case was to resume, HDS filed one of several motions for "continuance or mistrial."  <u>Schwab</u> Doc. 181 at 3 ll. 12-13.  A telephone conference was conducted on the motion.  As HDS accurately reports, after hearing argument from HDS's counsel the Court asked defense counsel, "Is it your position that this case should be aborted at this point with either a mistrial with the Court reserving jurisdiction to argue sanctions, *or in the alternative*, a motion to dismiss." <u>Schwab</u> Doc. 175 at 28 ll. 11-14 (emphasis added).

At the time the above question was asked, an earlier motion to dismiss made by Defendants was still pending.  On May 27, the Court gave notice to the parties that members of the jury had advised the Court that they would be available to resume trial after the two-week continuance that had been granted due to Mr. Zirkel's health issues.  Prior to the hearing, HDS's counsel had sent the Court a letter from a physician stating that Mr. Zirkel was not able to continue the trial.  <u>Schwab</u> Doc. 149.[15]  On that basis, HDS's counsel again moved for "a mistrial or a continuance until Mr. Zirkel's treatment [was] over." <u>Schwab</u> Doc. 158 at 8 ll. 6-11.  Defendants' attorney responded by making an *ore tenus* motion to dismiss the case.  <u>Id.</u> at 10 ll. 4-6.

By the time the Court held the June 13 hearing, the Defendants had supplemented their earlier *ore tenus* motion with a written Motion to Dismiss.  <u>Schwab</u> Doc. 162.  The

---

[15]HDS's counsel had not provided defense counsel with a copy of the letter.  The Court interrupted the hearing in order that defense counsel could be provided with a copy of the physician's report.

written motion was in the Court's possession when the Court asked counsel what relief he was seeking – dismissal or sanctions.  The notion that the Court "prompted" defense counsel to file a motion to dismiss is not supported by the record but instead is plainly refuted once the above-quoted question to defense counsel is placed in temporal context.  The Court did not have sufficient evidence that Mr. Zirkel was unfit to proceed with the trial or to grant Defendants' motion to dismiss, so these issues were set for an evidentiary hearing.

　　　　*8. Court's discussion regarding damages.*

　　　　Finally, HDS complains that the Court made the following statements in reference to damages sought by HDS: "You want another eight million dollars for those" and "Pretty good living."  (Schwab Doc. 154 at 7 ll. 7-8, 20 ll. 2-3.).  Again, context is important.  The first statement was made during a Final Pretrial Conference in this case, which was held just three work days before the scheduled trial on HDS's claim of infringements of two copyrighted house plans.  The Court was not the first to mention the figure of $8 million.  In fact, in the Joint Pretrial Statement HDS's counsel stated that damages for violation of just one of the copyrighted plans would be over $8 million, less deductions.  Schwab, Doc. 107, p. 4.

　　　　At the Final Pretrial Conference, the Court took up HDS's Motion for Extraordinary Relief (Schwab Doc. 115), which was  filed in response to an alleged discovery violation.  HDS claimed to have discovered that Defendants had violated two and possibly as many as four other copyrighted house plans designed by HDS.  (Schwab Doc. 154 at 11).  The following exchange took place:

　　　　HDS'S COUNSEL: That I can discuss, but it's not just a new plan.  There are

actually two plans that we discovered, two house plans that were not disclosed, and indeed we discovered just last night online there appear to be two more, by the roof designation, the roof of the house appears to show one that would be involved in this case and one that, as I can demonstrate to Your Honor, will be evidence of access in this case if it's not an infringement in this case.

THE COURT: You want another eight million dollars for those?

HDS'S COUNSEL: Well, remember Your Honor, that the eight million dollars is our gross revenue.  It's incumbent on them to show their costs and deductions.

Id. at 6:19-7:11.  The Court granted HDS's request for a hearing on the claim of a discovery violation.

The Court also was not the first to suggest that HDS was making a living of settling its many copyright infringement cases.  The question of the legitimacy of HDS's lawsuits was first raised by Defendants' misuse-of-copyright defense in Park Square.  Even though the misuse-of-copyright defense was not raised in this case, HDS filed a motion in limine seeking an order prohibiting the Defendants from mentioning any of HDS's other suits alleging copyright violations.  Later in the Final Pretrial Conference, the following exchange occurred:

HDS'S COUNSEL:  The first motion we filed was directed to excluding evidence of the existence of other Home Design cases.  As the court knows and was argued by Mr. Gilchrist in his response that there are a number of other lawsuits that Home Design Services has filed . . .

THE COURT: Why isn't that relevant to the misuse defense?  . . .

HDS'S COUNSEL:  Well, here is the issue, Your Honor.  Okay.  Why do they want to introduce that evidence?  In essence, they want to show that we're trying to make a *living off of filing lawsuits* that - -

THE COURT: A pretty good living, I guess, from the numbers you throw

around.

Id. at 18:13-20:3 (emphasis added).

In each instance, the Court's statement regarding damages was made in connection with issues pending before it.

*Conclusion*

HDS's motion for disqualification was not filed timely and for that reason must be denied. Other than the statements contained in the Order of dismissal explaining the Court's ruling in this case, the statements relied upon by HDS were made more than six months before the motion for disqualification was filed. The right to file a motion to disqualify a judge "cannot be used as an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs." Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 913 (11th Cir. 1998). HDS failed to proceed with the diligence required of a party seeking the disqualification of a judge.

Moreover, the statements contained in the Order of dismissal explain the ruling and ordinarily cannot be the basis of a motion to disqualify. Obviously, judges' rulings always reflect opinions favoring one side or the other, and often they require the Court to make judgments of credibility. That is one reason a judge's ruling will rarely form the basis for disqualification. See Liteky v. United States, 510 U.S. 540 (1994). Similarly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgement impossible." Id. at 555.

-24-

The facts alleged here do not constitute a basis for disqualification. When considered in context, the excerpts relied upon by HDS would not cause a reasonable lay person to conclude that the Court is biased.  Some of the comments reflect skepticism and others reflect views unfavorable to conduct of counsel or positions taken by HDS.  Still others reflect the frustration of repeatedly dealing with reasons advanced by counsel as to why these cases should not be tried on their merits pursuant to the Case Management Order.  The comments were, however, made in conjunction with the Court's efforts to determine facts necessary to make fair and legal rulings on pending issues or were statements made as part of the rulings.

Accordingly, HDS's motion to disqualify (Doc. 195) is **DENIED**.  HDS's motion for leave to file reply to Defendant's response to motion to disqualify (Doc. 202) is also **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida this 8th day of February, 2006.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record